**C L O S E D**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JO-BET, INC., d/b/a/ Henry the Eighth
South, a Michigan corporation,
    Plaintiff,

                                          Civil No. 01-73493

v.                                           Hon. Anna Diggs Taylor

City of Southgate a Michigan
municipal corporation,
    Defendant,

_____/

## MEMORANDUM OPINION AND ORDER

### I.
### *Introduction*

This matter having come before the court on Plaintiff Jo-Bet, Inc.'s Motion for Summary

Judgment [Dkt #104] and Defendant City of Southgate's Motion for Summary Judgment [Dkt #103];

for the reasons explained below, Plaintiff's motion is GRANTED and Defendant's motion is

DENIED.

**Background**

On May 10, 2000, the City of Southgate (hereinafter "Defendant") passed Ordinance 695,[1]

---

[1]Ordinance 695 mirrors the ordinance at issue in the United States' Supreme Court decision in *City of Erie v. Pap's A.M.,* 529 U.S. 277 (2000). In pertinent part, the ordinance states:

(a)      No person shall, knowingly or intentionally, in a public place:
          (i)      Engage in sexual intercourse;
          (ii)     Engage in deviate sexual intercourse as defined by Michigan law;
          (iii)    Appear in a state of nudity; or
          (iv)    Fondle the genitals of himself, herself or another person.

(b)      As used in this section, "nudity" means the showing of the human male or female genitals, pubic hair or buttocks with less than fully opaque covering; the showing of the female breast with less than a fully opaque covering of any part of the nipple; the exposure of any device, costume or covering which gives the appearance of or simulates the genitals, pubic hair, natal cleft, perineum, anal region or public hair region; or the exposure of any device worn as a cover over the nipples and/or areola of the female breast, which device simulates and gives the realistic appearance of nipples and/or areola.

(c)      As used in this section, "public places" means and includes all outdoor places owned by or open to the

which banned all public nudity and certain sexual conduct.  When Ordinance 695 was passed, there were only two topless establishments in Southgate and they were Plaintiff, Jo- Bet Inc's (hereinafter "Plaintiff"), bar "Henry the Eighth's South" and another bar, named "Subi's."

After the revocation of Henry the Eighth's liquor license and dancing permit, Plaintiff reopened its establishment as a totally nude juice and coffee bar.  Understanding that the new business would violate Ordinance 695, on September 13, 2001, Plaintiff filed its Complaint in the instant case seeking injunctive and declaratory relief.

On January 2, 2002, Plaintiff filed a motion for a preliminary injunction, arguing that the public nudity ordinance was overbroad, because it banned constitutionally protected expression. Further, it argued that, as applied, Ordinance 695 violated its equal protection rights, since the ordinance was not being enforced against bars with liquor licenses and dancing permits.  District Court Judge George E. Woods affirmed denied Plaintiff's motion because Plaintiff had failed to demonstrate any of the factors required for injunctive relief in this circuit. *Lexmark Intern., Inc. v. Static Control Components, Inc.* 387 F.3d 522, 532 (6th Cir. 2004).

On September 19, 2003, Plaintiff and Defendant, again, filed motions for summary judgment. Judge Woods denied both motions holding that there was not sufficient evidence to support granting

---

general public, and all buildings and enclosed places owned by or open to the general public, including such places of entertainment, taverns, restaurants, clubs, theatres, dance halls, banquet halls, party rooms or halls limited to specific members, restricted to adults or to patrons invited to attend, whether or not an admission charge is levied.

(d)     The prohibition set forth in paragraph (a)(3) hereof shall not apply to the following:
(1)     Any child under ten years of age; or
(2)     Any individual exposing a breast in the process of breast-feeding an infant under two years of age.

Ordinance 695.

2

either motion.  This case was later transferred to this court and discovery has now been completed.

This case is now before this court on cross-motions for summary judgment, again.

## II.

### *Legal Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III.

### *Analysis*

A.    The O'Brien Test Should be Applied to Ordinance 695[2]

The First Amendment is applicable to the states and municipalities through the Fourteenth Amendment.  *Fiske v. Kansas,* 274 U.S. 380 (1997).  In *Erie v. Pap's A.M.,* 529 U.S.277, 289 (2000), the Supreme Court acknowledged that nude/exotic dancing is conduct protected by the First Amendment.

The Supreme Court in *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560 (1991) and *Erie,* addressed First Amendment issues arising from government restrictions on nude dancing.  In *Barnes,* the Court addressed whether the State of Indiana's public nudity statute, which required dancers to wear pasties and a G-string, violated the First Amendment.  *Id.* at 563-64.  The Court there held that the

---

[2]*United States v. O'Brien,* 391 U.S. 367 (1968).

enforcement of a public indecency statute requiring dancers at adult entertainment establishments to wear pasties and a G-string did not violate the First Amendment. *Barnes* 501 U.S. at 581-82. In *Erie,* the Court addressed whether the City of Erie's public nudity ordinance, which was a similar blanket ban on public nudity, was an impermissible restriction on the exotic message communicated by nude dancing. *Erie,* 529 U.S. 277. The Plurality held that Erie's ordinance was a content-neutral regulation and valid under *United States v. O'Brien,* 391 U.S. 367 (1968) . *Id.* at 301.

In the instant case, it is undisputed that Ordinance 695 mirrors the statute at issue in the Supreme Court's decision in *Erie*.[3] In *Erie*, the Court explained that "being in a 'state of nudity' is not an inherently expressive condition." *Erie*, 529 U.S. at 289. Hence, to ascertain the level of scrutiny which must be applied to Ordinance 695, this court must determine whether Defendant's regulation is related to suppression of expression. *Id.* If Defendant's regulation is not related to the suppression of expression, then the less stringent test articulated in *O'Brien* will be applied.[4] *Erie,* 529 U.S. at 289. If the regulation, however, is related to the suppression of expression, then the heightened standard enunciated in *Texas v. Johnson,* 491 U.S. 397, 407 (1989) will be applied.[5] In order to

---

[3]In *Erie,* four of the justices (O'Connor, Rehnquist Kennedy and Breyer) concluded that the ordinance before the Court satisfied the four-factor *O'Brien* test. Justice Souter concurred that *O'Brien* applied but would have remanded the case for more evidence of harmful effects. Justices Scalia and Thomas concurred with the conclusion that the ordinance was constitutional but felt that the ordinance should not have been subjected to a First Amendment analysis.

[4]Intermediate scrutiny requires a regulating government to make some demonstration of an evidentiary basis for the harm it claims to flow from the expressive activity, and for the alleviation expected from the restriction imposed. *Edenfield v. Fane,* 507 U.S. 761 (1993).

[5]When a state attempts to regulate speech on the basis of its content and burdens a category of speech that is at the core of our First Amendment freedoms . . . a strict scrutiny analysis is applied. *Republican Party of Minnesota v. White* 536 U.S. 765, 774, (2002). In order to survive strict scrutiny, the state must prove that the abridgment of speech is narrowly tailored to serve a compelling state interest. *Id.*

decide whether *O'Brien's* test applies here, the court must first decide whether Ordinance 695 is content-neutral and if Defendant has asserted a reason for the adoption of Ordinance 695 that is unrelated to the suppression of expression. *Id.*

Plaintiff argues that Ordinance 695's blanket restriction on all public nudity is content-based and therefore, this court should apply strict scrutiny in determining whether the ordinance is constitutional. Defendant argues that because Ordinance 695 mimics the language of the ordinance at issue in *Erie* and the Supreme Court analyzed that ordinance under the less stringent *O'Brien* test, this court should do the same in the instant case. For the reasons stated below, this court agrees with Defendant.

Like the ordinances in *Barnes* and *Erie*, on its face Ordinance 695 is a general prohibition on public nudity. There is no language in Ordinance 695 regulating erotic messages containing nudity. The ordinance simply regulates the conduct alone.[6] Defendant has presented evidence showing that it did not enact Ordinance 695 to suppress the erotic message of nude dancing but instead, was motivated by the adverse secondary effects associated with adult entertainment businesses.

It is important to note that a residential neighborhood is located directly behind Plaintiff's adult entertainment establishment and that a church is located approximately two blocks away.[7] Hence, the adverse secondary effects that are intrinsic to adult businesses are a real concern to Defendant.[8] In an

---

[6]In *Erie,* the Court flatly rejected, as flawed, the view that a ban on public nudity is automatically related to the suppression of the erotic message nude dancing communicates. *Erie,* 529 U.S. at 293.

[7]See Defendant's Brief in Support of Summary Judgment, Exhibit 9, Opinion and Order Affirming the Denial of Request to Transfer Entertainment Permit, pg. 2.

[8]In *Erie,* the Court recognized that the ordinance at issue, which is virtually identical to Ordinance 695, was attempting to control the secondary effects of nude dancing, deter crime and "the other deleterious effects caused by the presence of an adult establishment in a neighborhood." *Erie,* 529 U.S. at 293.

5

affidavit, former City of Southgate Mayor, Suzanne K. Hall, stated that the impetus for the adoption of Ordinance 695 was to curtail the following: "sale of alcohol to minors; drug trafficking; illegal alcohol distribution; solicitation of sex acts; public urination near and around 'strip clubs,' and illegal parking on streets near and around 'strip clubs.' "[9] Further, the Michigan Department of Commerce Liquor Control Commission has given Plaintiff numerous citations for its dancers engaging in simulated sex acts on its premises and for exposing their genitalia.[10] Indeed, because of these numerous citations, Plaintiff's liquor and entertainment licenses were revoked. Moreover, former City Council members Edward J. Richter and Dale W. Zamecki testified that they received citizen complaints regarding Plaintiff's establishment.[11]

Plaintiff, argues that in order to escape strict scrutiny, Defendant must present evidence that its City Council considered evidence of secondary effects prior to the adoption of Ordinance 695. This argument fails for several reasons. First, as stated above, Defendant has presented ample evidence to support its contention that Ordinance 695 was adopted to combat the adverse secondary effects associated with adult entertainment businesses. Second, it is undisputed that Defendant also relied heavily on *Erie*, for its justification for the adoption of Ordinance 695. In *City of Renton v. Playtime Theatres, Inc.* 475 U.S. 41 (1986), the Court held that Defendant need not conduct independent studies regarding secondary effects but can rely on studies conducted by other municipalities. With respect to this point, the *Renton* Court stated:

---

[9]See Defendant's Brief in Support of Summary Judgment, Exhibit 21, Affidavit of Mayor Suzanne K. Hall ¶ 3.

[10]See Defendant's Brief in Support of Summary Judgment, Exhibits 2-9.

[11]See Defendant's Brief in Support of Summary Judgment, Exhibit 23, Richter's deposition pg.21.

> We hold that Renton was entitled to rely on the experiences of Seattle and other cities, and in particular on the "detailed findings" summarized in the Washington Supreme Court's Northend Cinema opinion, in enacting its adult theater zoning ordinance. The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

*Renton,* 475 U.S. at 51-52.

Hence, Defendant was not obliged to conduct its own secondary effects studies. Third, in *Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129, 135 (6th Cir. 1994), the Sixth Circuit stated that by requiring the City of Akron to present affirmative evidence of secondary effects, the district court imposed a burden on the City that Justice Souter's opinion in *Barnes* had sought to avoid. *Triplett Grille,* 40 F.3d at 132. Finally, the *Triplett Grille* court also held that "because the Akron public indecency ordinance is virtually identical to the Indiana statute considered in *Barnes*, the district court was bound to adhere to the specific result of that case, even though the Supreme Court failed to agree on governing standards." *Id.* at 132.

Consequently, this court concludes that Defendant's asserted interest in combating the negative secondary effects associated with adult entertainment establishments like Plaintiff's Henry the Eight's is unrelated to the suppression of the erotic message nude dancing conveys. Further, the court is bound by the Supreme Court's decision in *Erie,* in which the Supreme Court held that a public nudity ordinance, that is virtually identical to Ordinance 695, was content-neutral and thus, should be subject to the intermediate scrutiny articulated in *O'Brien*.

B.    Defendant's Ordinance is a Content-Neutral Regulation Valid Under the *O'Brien* test

In *O'Brien,* the Supreme Court held that "when 'speech' and 'non-speech' elements are

7

combined in the same course of conduct, a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms." *O'Brien,* 391 U.S. at 376.  As a tool for analyzing such a case, the Court espoused the following four-factor test for evaluating restrictions on symbolic speech: (1) if it is within the constitutional power of the Government; (2) if it furthers an important or substantial governmental interest; (3) if the governmental interest is unrelated to the suppression of free expression; and (4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.  *O'Brien,* 391 U.S. at 377.  For the reasons stated below, the court finds that Ordinance 695 is justified under *O'Brien's* four-factor test.

First, the regulation is within the constitutional power of Defendant.  In *Erie,* Justice O'Connor quickly determined that the regulation, which was adopted to protect the public's health and safety, was clearly within the city's police powers.  *Erie,* 529 U.S. at 296.  In the instant case, former Mayor Hall made it clear that Ordinance 695 was enacted to protect the citizens of the City of Southgate from illegal and indecent acts.  Therefore, the regulation is a reasonable exercise of the Defendant's police powers.

Second, the regulation furthers an important or substantial governmental interest.  Defendant has maintained that Ordinance 695 was adopted to alleviate the adverse secondary effects associated with adult entertainment establishments.  "The asserted interests of regulating conduct through a public nudity ban and of combating the harmful effects associated with nude dancing are undeniably important."  *Erie,* 529 U.S. at 296.  This court accordingly reaches the same result.  See *Triplett Grille,* 40 F.3d at 135.

Third, Defendant's governmental interest is unrelated to the suppression of free expression.

8

Having already found that Ordinance 695 is content-neutral and that the reason for its adoption was to curtail the adverse secondary effects linked to adult entertainment, the court must conclude that Ordinance 695 is unrelated to the suppression of free expression.  Again, *Erie* dictates this result since that Court reached the same conclusion when presented with a similar ordinance.  *Erie,* 529 U.S. at 301.

Finally, the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.  Like the ordinance in *Erie,* Ordinance 695 regulates conduct, and in accordance with *Erie,* "any incidental impact on the expressive element of nude dancing is *de minimis*."  *Erie,* 529 U.S. at 301.  In concluding that this fourth factor was satisfied, Justice O' Connor stated: "[t]he requirement that dancers wear pasties and G-strings is a minimal restriction in furtherance of the asserted government interests, and the restriction leaves ample capacity to convey the dancer's erotic message."  *Id.*  Consequently, this court must conclude that Ordinance 695 is a content-neutral regulation that is valid under *O'Brien.*

C.      There is no Equal Protection Violation

Plaintiff argues that its equal protection rights guaranteed under the Fourteenth Amendment have been violated because Defendant has not enforced Ordinance 695 against adult entertainment establishments with state issued liquor licenses and dancing permits.  For the ensuing reasons the court disagrees and finds that Plaintiff's equal protection rights have not been violated.

The Equal Protection Clause protects against arbitrary classifications, and requires that similarly situated persons be treated equally. See U.S. CONST. Amend. XIV; *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985).  In order to withstand Fourteenth Amendment scrutiny, statutes or ordinances that do not interfere with fundamental rights or single out suspect

classifications must bear only a rational relationship to a legitimate state interest. *Id.* at 440. The Equal Protection Clause can give rise to a cause of action on behalf of a class of one where the plaintiff did not allege membership in a class or group. *Village of Willowbrook v. Olech,* 528 U.S. 1073, (2000). Indeed, the Supreme Court has recognized successful equal protection claims brought by a "class of one," where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook,* 528 U.S. at 564.

On its face, Ordinance 695 makes no exceptions for adult establishments with a State of Michigan issued entertainment and liquor licenses. Hence, Plaintiff's equal protection challenge is not based on the actual text of Ordinance 695 but Defendant's alleged selective enforcement of the Ordinance. Plaintiff's claim, however, must fail because Plaintiff cannot show that Defendant treated similarly-situated adult establishments (i.e. those without a state issued entertainment and liquor licenses) differently than Plaintiff and Plaintiff also has failed to show that Defendant does not have a rational basis for **not** enforcing Ordinance 695 against adult establishments with a state issued liquor license and dancing permit.

Plaintiff argues that its equal protection rights have been violated because Defendant has not enforced Ordinance 695 against adult entertainment establishments with state issued liquor and entertainment licenses. Defendant acknowledges that this is true.[12] Plaintiff's argument, however,

---

[12]See Defendant's Brief in Support of Summary Judgment, Exhibit 13, Southgate Police Department memorandum stating:

In order to engage in "topless dancing", an establishment must meet two criteria:

1)      Must possess an "entertainment license" issued by the Liquor Control Commission specifically permitting such conduct.
2)      Must satisfy all applicable state and local zoning requirements.

is flawed, because Plaintiff is not similarly-situated with these businesses. Indeed, Defendant enforced Ordinance 695 against the Tap Room, which also lacked a state issued dancing permit. The Tap Room is a bar located in Southgate and which received citations under Ordinance 695 because contestants in a wet-t-shirt contest at the bar exposed their breasts. Therefore, Defendant has clearly enforced the Ordinance against a similarly-situated establishment.

Further, Defendant does have a rational basis for the selective enforcement of Ordinance 695. Establishments with state issued liquor and entertainment licenses are also regulated by the State of Michigan. Indeed, Plaintiff lost its licenses because it violated the state's regulations. Hence, Defendant would not receive any enforcement assistance from the state regulating adult establishments that do not have state issued licenses. This additional help in the regulation of adult establishments is vital to a small municipality like Defendant. It is reasonable for Defendant to try to avoid utilizing its resources to monitor and regulate establishments, when the state has already assumed that role. Accordingly, Defendant's selective enforcement of the Ordinance only against establishments not regulated by the state does not violate Plaintiff's equal protection rights.

D.      Ordinance 695 is Overbroad

Defendant has argued that because Ordinance 695 mimics the language of the ordinance at issue in *Erie* and that ordinance was found to be constitutional, Ordinance 695 should not be subject to an overbreadth challenge.[13] The court must reject this argument and it finds that Ordinance 695 is

---

[13]The Supreme Court never addressed the overbreadth issue in *Barnes* or *Erie*. Regarding this point, the Seventh Circuit in *Schultz v. City of Cumberland,* 228 F.3d 831 (7th Cir. 2000), stated:

> [T]he Supreme Court did not reach the issue of overbreadth in either case  In
> *Barnes,* a state court decision provided a limiting construction that saved the
> public-nudity statute from overbreadth. (Citations omitted)  However, speaking
> for the Court, Justice Souter questioned skeptically whether the
> secondary-effects rationale from that case would protect against an overbreadth

overbroad because it chills possible future protected conduct (i.e. nudity in plays or other high culture entertainment), and must fail for that reason.

The "overbreadth doctrine constitutes an exception to traditional rules of standing and is applicable only in First Amendment cases in order to ensure that an overbroad statute does not act to 'chill' the exercise of rights guaranteed protection." *Triplett Grille,* 40 F.3d at 135. A "law is overbroad under the First Amendment if it 'reaches a substantial number of impermissible applications relative to its legitimate sweep." *Odle v. Decatur County,* 421 F.3d 386, 393 (6th Cir. 2005). In *Odle,* the Sixth Circuit explained that the use of the overbreadth doctrine is a harsh remedy stating:

> If an ordinance is held to be overbroad, the result is dramatic: any enforcement of [the ordinance] is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression. (Citations omitted). Consequently, the invalidation of an ordinance on overbreadth grounds is 'strong medicine' to be used 'sparingly and only as a last resort.'

*Odle,* 421 F.3d at 393.

In reviewing a regulation similar to Ordinance 695, the *Odle* court applied intermediate scrutiny stating:

> As it has been applied in the overbreadth context, intermediate scrutiny requires (at least) proof that most establishments to which the challenged ordinance or statute applies are likely to spawn harmful secondary effects if permitted to hold performances involving nudity and/or content that could reasonably be viewed as sexually suggestive. (Citations omitted). This is a corollary of the principle that an ordinance or statute is overbroad if it 'reaches a substantial number of

challenge if the statute 'bar[red] expressive nudity in classes of productions that could not readily be analogized to the adult films at issue in *Renton.*'. . . In *Erie,* the Court again did not reach the overbreadth question presented by the parties. The Court simply reversed the Pennsylvania Supreme Court on other grounds and remanded without addressing overbreadth.

> impermissible applications' relative to [its] legitimate sweep.'

*Odle,* 421 F.3d at 393.

Defendant argues that Ordinance 695 is not overbroad because it has not enforced the Ordinance against any theatrical performances with nudity.  The *Odle* court flatly rejected this argument, however, and therefore it is not availing to Defendant.  With respect to this point, the court stated:

> In sum, neither proof that an ordinance as currently applied has no unconstitutional effect, nor assurances offered by the relevant local authorities that the ordinance will not be put to such an effect in the future, constitute 'constructions' of the ordinance, as that term is ordinarily understood.

*Odle,* 421 F.3d at 397.

Therefore, the fact that Defendant has not yet enforced Ordinance 695 in a way that would impinge upon protected expression does not save the Ordinance from an overbreadth challenge.

Further, Defendant contends that the overbreadth doctrine should not be applied to Ordinance 695 because the City of Southgate is small and it lacks the venues to show theatrical performances such as *Hair* or *Equus*, or other high cultural events.  Again, the *Odle* court addressed this argument and squarely rejected it.[14]  Indeed, the court stated that with respect to overbreadth analysis, it is immaterial that [a municipality] presently lacks venues where serious literary or theatrical productions are reasonably likely to occur.  *Odle,* 421 F.3d at 393.

---

[14]In analyzing the ordinance in *Odle,* the Sixth Circuit recognized that it had to adopt a limiting construction to save the ordinance from invalidation, if it is readily susceptible to such a construction.  Viewing the ordinance in this context, the court concluded:

> [W]e do not think the fact that Decatur County purportedly lacks, at the present time, venues likely to hold performances of literary or artistic value should affect our construction of the ordinance's plain language.  *Odle,* 421 F.3d at 396.

13

Defendant also used the same argument to distinguish the instant case from the Sixth Circuit's decision in *Triplett Grille*. The court finds this argument unpersuasive. In *Triplett Grille,* the Sixth Circuit was presented with an ordinance similar to Ordinance 695 and found it to be facially overbroad because the City of Akron failed to demonstrate a link between nudity in non-adult entertainment and secondary effects.[15] *Triplett Grille,* 40 F.3d 135. In rendering its decision, the court stated:

> The Akron public indecency ordinance at issue here prohibits all public nudity, including live performances with serious literary, artistic, or political value. The ordinance makes no attempt to regulate only those expressive activities associated with harmful secondary effects and includes no limiting provisions. Instead, Akron's wide ban on public nudity sweeps within its ambit expressive conduct not generally associated with prostitution, sexual assault, or other crimes. . . . Because the City failed to present evidence linking expressive nudity in 'high-culture' entertainment to harmful secondary effects, we conclude that the ordinance infringes speech protected by the First Amendment.

*Triplett Grille,* 40 F.3d at 136.

This court follows the Sixth Circuit's rulings in *Triplett Grille* and *Odle* and thus concludes that Ordinance 695 is overbroad. First, like the City of Akron, Defendant has failed to present any "evidence linking expressive nudity in 'high-culture' entertainment to harmful secondary effects." *Triplett Grille,* 40 F.3d at 136. Second, Ordinance 695 is devoid of a limiting provision that would exclude protected activity from its prohibition. Finally, the court cannot supply a limiting construction for Ordinance 695. Indeed, "[i]t is well recognized that federal "courts do not rewrite statutes to create constitutionality." *Id.* Consequently, Ordinance 695 violates the First Amendment because it is

---

[15]Like Ordinance 695, the Akron public indecency ordinance at issue in *Triplett Grille,* prohibited "all public nudity, including live performances with serious literary, artistic, or political value." *Triplett Grille,* 40 F.3d at 136. Also like Ordinance 695, the ordinance made "no attempt to regulate only those expressive activities associated with harmful secondary effects and includes no limiting provisions." *Id.*

substantially overbroad and is not subject to a saving construction.

IV.
*Conclusion*

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED**.

DATED: <u>February 13, 2006</u>                    <u>s/Anna Diggs Taylor</u>
                                                    ANNA DIGGS TAYLOR
                                                    UNITED STATES DISTRICT JUDGE

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing *Memorandum and Opinion* was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail (Eric A. Ladasz and John P. Timmony) disclosed on the Notice of Electronic Filing on **February 14, 2006**.

                                                    <u>s/Johnetta M. Curry-Williams</u>
                                                    Case Manager